I just want to put on the record Judge Holdren, I took her class when I was in high school 8 years ago. We have no objections to her. I do recognize you. I don't remember what I gave you in the class this grade. I won't take that into account in any way. Thank you, I appreciate it. I've taught a lot of students over the years. I appreciate that. Thank you very much. Thank you, Mr. Tully. Good morning. Good morning, Judge.  Thank you. Folks, please decorate. I'm Matthew Tully, here for the Appellate Dental Council. Where I bring you from the great state of New York. Welcome back. We see you here often. Happy to have you back. Thank you, Judge. Judge, since the brief filed on this case, Kirkendale v. the United States Army was decided. Kirkendale, as you are aware, since you were the writer of Kirkendale, expanded many veterans' benefits rights to USERRA. Specifically, in your decision, Judge, you mentioned Fischl v. Sullivan-Drylock. And how veterans' legislations, like USERRA, are codified in the veterans' benefits statute. And they're to be liberally construed for the benefit of those who left private life to serve their country in our greatest need. What we have here, Judge, is MSPB looked at a very narrow aspect in this case. The facts and circumstances of Budweiser-type cases are reservists do not collect a large sum of money. Reservists collect maybe $1,000, $2,000 in the form of valuable leave, or in this case, the recrediting of military leave. So Mr. Jacobson can go and fight a battle in a later day. To compare the small amount of leave, let's say 16 hours, versus the overall success of the case, doesn't take into account the veterans' benefit provisions, which say you have to give the veteran the benefit of the doubt. But wait a minute. He didn't say that you don't qualify as the prevailing party, even though the 16 hours you won was only a small fraction of the original claim. He said that was a factor he was going to consider in exercising discretion whether to award fees. So he didn't deny you the status of prevailing party. He didn't deny the status of prevailing party, Judge. What he did is he determined, he being MSPB at the full board, determined that the overall success was so minimal there was no need to go into the reasonableness of the award. It's our position that you can't look at this as a seven-year time frame and there's 900-and-some-odd days and you only got two. You could only take X number of military days a year. Isn't the question whether the judge is allowed to consider the extent of the win as a factor? If we go down that road, Judge, it's my position that MSPB has regulations dealing with the awarding of maternities. In those regulations... Wait a second. I know you understand your answer. Is your answer that no, he may not consider the smallness of the win as a factor? Judge, it's my position, which is in the agency pleadings on page 11. Discretion of the court entitles the prevailing party to obtain attorney's fees unless there are special circumstances. And when you take into account that this is a veteran's benefit, the special circumstances have to be severe, such as a disbarable offense. And on page 11 of the agency's brief, they have in their Christianberg-Gorman's company versus EEOC, which specifically held whenever Congress gives this discretionary power to certain entities, those people that are prevailing are entitled to attorney's fees minus special circumstances. So there's no discretion then? You're saying that the discretion really is mandatory? I'm not saying that, sir. I'm saying that there are special circumstances that would disqualify attorney's fees. I don't believe that there are any special circumstances, such as duress, such as improper behavior, frivolous conduct, those type of special circumstances to prevent attorney's fees. Wait a second. I'm confused. I thought the statute said that the board may, in its discretion, I think that's almost the exact quote, award attorney's fees. So on the face of the statute, it seemed to suggest that in some cases the board will, and in some cases won't. It won't award such fees, and that it's a matter of discretion. Absolutely, Judge. But you seem to argue in your brief, as I recall it, that even though it talks about discretion, it really becomes a matter of entitlement, provided that, number one, you prevail, and number two, that you provide documentation about what the fees were and that they're reasonable and so forth.  But I'm trying to understand what the cases you're now citing have to do with your argument, which I thought was your primary argument, that although facially a matter of discretion, in application, the fee provision is a matter of entitlement, and the fees must be given, provided only that the documentation required by the underlying regulation is provided, which it clearly was in this case. Judge, that is our position. This is a moving target, as we see it. Attorney's fees, as everybody can see, is a matter of first impression for this court. And in this case, there's a first impression crime that's pretty big. When Mr. Jacobson entered this, we entered it under the assumption that if he punched, for using the agency's terms, punched the punch list, there was no fraud, there was no frivolous conduct, there was no duress, there was nothing of that nature. I don't understand any such thing to be alleged by the government. There's nothing. So there's no bad conduct in the picture. Everybody admits that you did document the fees and the hours and the work, et cetera, as required by the regulation, I think. Right. And so the question seems to be whether, in the absence of bad conduct and in the presence of the required documentation, a discretionary award becomes an entitlement. You seem to say, yes, it does, and the government seems to say, no, it's always a matter of discretion, and it depends on all the facts and circumstances of the case. Do you disagree with that last position, that it depends on the facts and circumstances of the case? The facts and circumstances of the case, Your Honor, I think goes to Part 2, which is reasonableness of the award. The issue of discretion is either yes or no. If it's yes, then the next step is the award reasonableness. Yeah, but here there was no award, so we're not talking about whether the award should have been $4,000 versus $6,000. Here there was no award, zero dollars. Absolutely. And you're saying you were entitled to an award in some reasonable amount. That is correct, Judge. We believe that discretion— But are you entitled to that because of the case law that you cited earlier, or are you entitled to that because you complied with the reg, and that's all that should be necessary to convert the discretion into entitlement, or what? Two reasons, Judge. The first one is the case law allows for an entitlement of attorney's fees under the discretion standard, as the agency pointed out on page 11, barring special circumstances. The case law under this statute? Not under this statute. That's the thing that I'm troubled about. The fee statutes have lots of different provisions. Sometimes we can construe them consistently, but not always, because Congress uses sometimes substantially different language and terms and conditions in the different fee statutes. We're only talking about the user of the provision in this case. Just in this case, then, Judge, the veteran is entitled to the benefit of the doubt. So if there's a doubt as to what discretion should be, because MSPB has the authority to write regulations to say, you do ABC, but you forgot E, F, and G, that's the discretion that they can use to deny attorney's fees. Are you saying that by what they didn't include in their procedural regulation when they promulgated it, that they forfeited all of the discretion that the statute conferred on them? All of the discretion, yes, Judge. The signage, by what they didn't include in the procedural regulation, you're saying that means they gave back to the Congress all the discretion they had been given. I believe that, Judge, because then that becomes arbitrary as to who gets attorney's fees and who doesn't. If there is no clear-cut rule as to, okay, Matt Tully has to do ABC to get attorney's fees, then it becomes arbitrary in their decisions as to Matt Tully. And here's a perfect example, Judge. In the same regional office as the administrative court judge in this case, Judge Vogel, we got no attorney's fees from Judge Vogel. Within a month later, in seats versus VA, a counterpart of hers awarded us attorney's fees. Maybe the facts and circumstances were different, and the whole idea of discretion is you get different outcomes if you have significantly different facts and circumstances. And it's our position that an entity that is not an Article 2 or an Article 1 or an Article 3 entity doesn't have wide-ranging discretion like that. They have the discretion that the court or the Congress has given to them. Congress has given them the ability to write rules that will allow them to disqualify attorney's fees. Without writing those rules, without saying if A, B, and C is done, you don't get attorney's fees, we don't have a problem with that. But right now, we have a moving target, and the attorneys, the bar from Sarah is so small. Isn't that a consequence of Congress having said, may, not shall, may award attorney's fees in its discretion? You could say, well, that creates indefinite standards. I would agree with that. But that's what Congress seems to want and express its will in this case. And it seems like unless somehow the statute is unconstitutional, that we're stuck with it as a statute that appears to create broad discretion. But I don't believe you are stuck with it, Judge, because you have all of the veterans' benefits and laws that are out there that say the veteran gets the benefit of the doubt. Here, it's not a question of benefit of the doubt. It's a question of whether the court is allowed to exercise discretion according to the particular facts of the individual case. And if we look at the individual facts here, Judge, the appellant asked for everything that he was legally entitled to. He got everything he was legally entitled to. It was not minimal success. He got everything that he wanted. This was a home run for him. Because when you take into account, he filed his petition back in 2005, approximately three years after Butterbar came out, three years that the agency could have credited him or could have been more proactive. And this pertains to the leave that he took, I believe, in 1999. So the fact that he got everything that he asked for, which is giving back the leave that was improperly taken, I don't think that it was minimal. It was 16 hours. It was 16 hours plus four. Plus four, the judge found was a clerical mistake and recredited. But he was remanded standing for 16 hours of military duty. That's correct, Judge. One week. Right, Judge. Saturday and Sunday. Executive day. But, you know what, Judge, for a veteran, that's a lot. That's a few hundred dollars. And to say that that's nominal would open up a Pandora's box. There's nothing in your share that says you have to have $5,000 worth of damages. And what's happening here is if we say Mr. Jacobson got everything he was entitled to but it was still nominal, what's going to happen is no attorneys are going to take these cases anymore. I thought that the concern of the board wasn't so much that the actual dollar amount was small. I thought what the board was unhappy about was the fact that there was a claim for a very large amount of credits over a six- or eight-year period, and the final result was only two days of a single weekend or 16 hours so that the claim was for a huge amount of time and the award was for a tiny percentage of that. Judge, unfortunately, MSPB required a wide expansion. What we were doing is we were filing more narrow approaches, and MSPB was not allowing us to engage in discovery to get time records. Our original filings were for two-year periods, and the MSPB started rejecting those petitions and saying you need to open up the time frames. Otherwise, you're going to have to file three or four different petitions to cover each different segment, and then you can engage in discovery. Since there's no time limit to filing, what's going to happen, Judge, is if this were to stand, rather than my firm filing one case for 18 years, we file 18 separate cases, filing up MSPB, and that's what MSPB tried to do, Judge. Wasn't it another factor that the board relied on in exercising its discretion that the Justice Department had created a procedure whereby without going to court, so to speak, any employee or former employee could get a review of his name records and the corrections that would be due under the correct approach of the law? Thank you for bringing it up, Judge. That's exactly what they said, and I believe that is tantamount to retaliation against my client. My client has a right under USARE to file a complaint with MSPB. If he files an administrative remedy through the Department of Justice, he could be subjected to retaliation, and there's no protection. We don't recommend any of our clients to go through the administrative measure for a multitude of reasons. One, they lose the protection that USARE affords them against retaliation. Two, the administrative process... Wait a minute. Some of your clients might be potentially subject, perhaps, to retaliation, but as I understand it, Mr. Jacobson was long gone from the Justice Department at the time that this claim was asserted. So how could he be retaliated against? He doesn't even work there anymore. Well, Judge, one of the requirements of the administrative claims process is the appellant has the burden of establishing all of the documents and presenting them to the Department of Justice. By filing a complaint with MSPB, we were able to use the judicial subpoena powers of MSPB to get the defense, finance, and accounting service... What do I do if I'm a reservist? 1970 to 1972. 60-60. Thank you. What do I do? Do I have to file a Freedom of Information Act request to the Justice Department to get my leave records and then turn around and present those back to the Department with my claim for adjustment? Along with your military records, because you have to show when you took military leave. So just your civilian records alone don't work. You need your military and your civilian records. But how do I get the civilian records? Do I have to ask for them from the Justice Department? If you're doing it administratively, yes, Judge. If you do it through us, we file the paperwork. Within 20 days, we move for subpoenas and discovery to obtain the paperwork. Our process with Tully Rinkey, and we've done hundreds and thousands of these, not hundreds of thousands, hundreds of thousands, of these cases, as this Court knows. We have 50 cases pending right now. We had two cases yesterday. This is all bread and butter. And we are able to get a claim. 50 in this Court? 50 in this Court, Judge. How many in the Board, roughly? My guess is I think we have... we have about 400 pending now at the Board. In addition, we haven't even filed claims against the Postal Service. We have about 1,000 of them in our back pocket. Does the USERA Act have a requirement to exhaust administrative remedies as a prerequisite to filing the Board? Absolutely not, Judge. So you'd say that since that's not a requirement, it's not proper for the judge to then use for failure to follow the administration? Absolutely. That is exactly our position. That is tantamount to retaliating against the person for filing and exercising his rights under USERA. What we want here, Judge, is for people to come to MSPB in flux and exercise their rights. I'm a firm believer that many of the things that are going on with USERA, and I am an Iraqi war veteran, many of the things with USERA are not intentional. People are not going out there and saying, you know,  It's a lack of knowledge. And this flux of butterball cases has put USERA on the front line. Kirkendale has put USERA on the front line because of all the publicity that's out there. And what we're seeing is a tide of USERA increases going up. But now because of these cases and these decisions coming out of your court, the tide is slowly starting to turn back. The tide of cases? The tide of cases. Because remedies are being voluntarily provided by the government? Remedies are being provided. Settlements are very high. The problem that we have with settlements, Judge, is if this case comes down and says, you know, attorney's fees are at the discretion of the court, there won't be any motivation to settle unless the client gets 100 percent. Because where are the attorneys going to get paid? All right. I think we have your position clearly in mind. Let's hear from Mr. Wolfe. Thank you, Judge. Thank you. May it please the court. We ask that the court affirm the board's decision in denying Mr. Jacobson his petition for his attorney's fees. We know what your position is. What we need you to do is to respond to the arguments he's just made. By the way, moving targets, first of all, procedural things, Mr. Jacobson's counsel did not file a reply in this case. And when I was sitting down, I heard a number of arguments that he was making right here for the first time. We'll limit it into his brief, though. That's a fair complaint. You can be assured that we won't allow new arguments to creep into the case that are not within the corners of his blue brief. But you still need to respond to what he said that is in his blue brief. Well, with respect to what is in his blue brief, the statute does grant the board discretion, simple discretion to award or deny attorney's fees. Yeah, but one of his arguments is that in exercising that discretion, the board can't use illicit criteria. And he says it's an illicit criteria to focus on the smallness of the dollar amount of the award, or to focus on the lack of pursuing a private request to the justice department. It seems to be the things that the board relied on to exercise its discretion to deny fees in this case. I'll address each of those in turn. With respect to the dollar amount of the award, it's not an absolute dollar amount, not a threshold that the court should look at. The Supreme Court precedent in Farrar and Hensley pretty clearly states that it's a comparative analysis. Comparative what? The original claim to the amount recovered. He says he's forced to make a broad claim because of prior rulings of the board to throw him out if he makes a temporarily narrow claim. It's a little bit of a catch-22. If you make him plead many years, and then they turn around and say, well, after pleading many years, he only got two weeks of adjustment, therefore he doesn't get fees. That seems a little harsh. Hypothetically, that does seem a little harsh. There's nothing in the records. It's not hypothetical. I can't say whether it is or not. I've seen nothing about that until today, heard nothing about that until today. So I don't know, and I can't make a representation of that. But in this particular case, the complaint was broad and general for the, I believe, seven years, 1995 to 2001. He didn't claim any specific number of hours, right? No, the complaint... He just said, I should get whatever I'm entitled to for the time span of 1997 to 2001, whatever it was, or some period like that. Yes. So it's not like he claimed 4,000 hours, but only got 16. He just claimed the hours that he was entitled to for a six-year period. Yes. Turned out to be 16. We're not dealing with a ratio here of the recovered amount versus the claimed amount, because there never was a claimed amount. But we can look under the statutes and regulations, and there are 15 hours allotted for military leave, this type, each year. And so, I believe, over seven years, that'd be 105 hours. Or, I'm sorry, 105 days. If I misspoke on 15 hours, that'd be 15 days. And to get two days back, that is a minuscule amount when compared. I don't understand why you're saying he's claiming 15 days per year for seven years. If his original complaint was, I was improperly charged for an unknown amount of military leave days per year for seven years, his entire entitlement would be 15 days per year under the statute that authorizes the granting of that military leave. I don't understand what you're saying. He says, I never pleaded any specific number of days or hours as what I was claiming, because I didn't know. I pleaded a time period and said, credit me whatever is credible to me in that time period. Is that not an accurate statement of what the claim was? I think, yes, that would be an accurate statement. Okay, so where is the overreach? Where is the disproportion? I'm trying to figure it out. Why the board should have been upset that it was only 16 hours? How many hours did they think it should have been? Well, in this particular case, if you look back in the record at his original proceedings and then the original fee application, what happened here was the claim was filed, the board directed the claimant to go back and substantiate it. And I think this is pretty well set out in the original initial decision, the board's initial decision on the merits of the claim, was came back with three things, an affidavit saying he may have lost time over that period, a statement, I believe it was a retirement, a chronicle statement of retirement points or something like that, which said generally he may have lost time over that period, and then a single pay period report that indicated the two days that were there. So that evidence was in the petitioner's possession and he knew about it, presumably, when he filed the claim. The court ordered the agency to go back... Wait, wait, wait, don't jump in. You say he already had those documents before they were discovered. How could that be? He didn't even work there. How does he have access to the Justice Department time records except through the discovery process of the board? What I know is that in this case he was asked to submit these items, substantiation for his claim, and... It was after discovery, as I understand it. And when he was asked to specify and sharpen and clarify and narrow his ultimate claim, it was based on the discovery. It's my understanding that there was a concurrent request by the board to both the petitioner and the agency to examine the evidence that either of them had. Naturally, the agency would have access to everything, and it did, in fact, go back... As I understand from Mr. Tully, the client didn't have anything. In the way of documents, the relevant documents, the time cards, the... In that case, I don't know how to reconcile Mr. Tully's statement with the fact that his client submitted a time card. Because he got it through the discovery process. That's the obvious answer to the question, isn't it? If he didn't have it before, but he finally did submit it to the A.J., and in the intervening time there was discovery, QED, he got it through the discovery. In that case, I can't reconcile that with the necessity for the agency going through its own review and submitting its evidence directly to the board. Because if I'm the A.J., I'd want the agency to go through its own record, because they may agree that they miscredited some number of hours or days, and they may fix it, in which case I can settle the case and not have to adjudicate it. Saves me a lot of time. I'm a really busy A.J. with thousands of cases. Of course I want the agency to look at whether they might not want to settle the case voluntarily and get it out of my court, off my docket. Which is exactly what they offered to do in this case. They proceeded on to a resolution, and the petitioner got 4 hours less than what the agency was willing to credit him with. Because there was an additional day where Mr. Jefferson had requested 4 hours. I don't understand what you're saying. He did, after receiving, what, an offer from the Justice Department to credit 16 hours? At the conclusion of the court-ordered submissions to substantiate the claims. The agency found 20 hours. Mr. Jefferson found 16. The agency found that that additional 4 hours was not a violation of the use rate. I'm trying to understand, what did he do wrong? You're saying that he made the court go through some kind of exercise that was totally unnecessary because the agency was already willing to give him not only 16, but 20. I don't understand, what is it that he did wrong? Not dropping his claim? No. Basically, asking for 7 years in time when he got 2 days of it. Why is that wrong? He was a reservist for all those years. And all those years, the leave records were being filled out however the Justice Department people filled them out. He doesn't have them. He doesn't have perfect memory, and he never saw them anyway. So, what can he do other than ask for the whole time period? And then everybody will look at the records and see. You seem to be suggesting that he made either the agency go to a whole lot of trouble that was not necessary and not justified, or he made the board go to a whole lot of trouble that was not necessary and not justified. And I'm trying to understand why you think either of those might have been the case. As I tried to explain before, it was not my understanding that there was a discovery process here that led to Mr. Jacobson receiving that one paper application. Is it your view that he had all the records for all 7 years before he even filed this case? No, but it is my view that... Then, other than discovery, how could he have gotten records that he didn't have on day one of the suit? He couldn't have. He got it from discovery, didn't he? Again, it's not my understanding that in the record there was that discovery in this case. It's my understanding that there was a petition submitted, clarification and substantiation were requested from both sides, which then came in, and then matched. The difference being that the agency found 4 extra hours that were not violated in use of records, and so, therefore, were not ordered to award. Are you suggesting that the records for 7 years fell out of the sky on Pauley's quantity? No. I don't understand what you think happened here. Are you suggesting there was no discovery at all by Mr. Jacobson? He doesn't know. What I'm saying is I can't make a representation of that. I know what happened in the decisional process, and the agency went and searched it as it was discovered. We can read the opinion. It doesn't help us for you to just tell us what's in the opinion. We've got the opinion. We can read the opinion. If you don't understand what happened prior to the opinion, you can't help us, because you're suggesting that Jacobson did things that weren't right, and the board was correctly peeved about that, and, therefore, they were justified in denying the fees. But if you don't know what the pre-decisional facts were, I don't understand how you can support your argument that Jacobson did something wrong and put the department or the board to a lot of trouble unnecessarily. I'm sorry. I may have let this get to the point. I don't mean to suggest that Mr. Jacobson, with respect to the amount of time that he obtained, restored, compared to what he asked for, was wrong. It's just a very small amount. And under the controlling Supreme Court case law, where there's that disparity between what you actually claim and what you actually receive, that's a consideration that can justify According to your own understanding of the case, the only disparity was between 16 and 20 hours. The final submission by Tully was 16. The final submission by the agency was 16 plus 4. So how is there this huge disparity between what he, quote, claimed and what he was awarded? It's 100%. He got all of what he claimed. It's our position that he claimed the full amount of military time from the entire seven years that he asked for. What's your basis in saying that? Because he says in his claim that he's asking for restoration of any military time. Any military time that wasn't credited properly, unknown number, maybe it's zero. He might have been asking for zero. All he's really saying is check the records and make sure it was done right. What's wrong with that? Well, we have to dig deeper into the record question. I don't know that there's a cause of action here to have the agency check the records and make sure it was done right. There has to be a claim that the agency improperly charged him. But how does the reservist know? Because he's never seen the records. He doesn't know whether the agency corrected his two weeks of active duty for training up at Fort Devens, Massachusetts in July of last year, for example. He doesn't know whether it was correctly recorded or not. He doesn't keep the records. He doesn't see the records. He doesn't have possession of the records. All he can do is either ask the Justice Department as a favor to review the record, or under the congressionally enacted process in the MSPB, make a claim. Or whatever miscredits may have occurred. As a matter of curiosity, yes, he could ask the Justice Department informally or through the administrative process that was set up to avoid making a federal case out of this. But if he's going to make a claim, part of that claim passed on to you. That's not fair. Congress made a federal case out of it. They passed a statute arranging for jurisdiction at the board and compensation if there were errors. He's not making a federal case out of this. He's doing what Congress authorized him to do, I think, unless I misunderstand something. I agree. And part of his case is that the agency did something wrong. This is not a matter of curiosity. I don't believe it is the same. Well, what are you suggesting? That there's a Rule 11 violation here because he didn't really know for a fact that they miscredited him some of the time? Is that what you're saying? No. Well, how far are you? I'm just not with you at all here. I don't understand what it is that he did that was wrong, inefficient, abusive, unnecessary, unauthorized, fattening, un-American, or anything of the kind. I understand. It's our position that his claim is for 15 days per year for seven years. And he recovered two days under the case law. That's a factor that can warrant reduction or elimination of reasonable time. If your premise is correct, your conclusion is correct. If he was claiming 900 days, or 900 hours, or whatever, and he only got 16, he would be right. But I'm not sure that it's true that you can say he was claiming 900 hours. Well, we'll just look at the papers and try to sort it out. All right. We'll give you two minutes of rebuttals to tell me, and then we'll be concluding with Jacob. And then we'll just go back over the paper. Thank you, Judge. Judge, just so you know, the MSPP discovery process is not incorporated into the MSPP record. Because there was a discussion about that, the appellant on November 29th launched discovery. That's how we were able to obtain the information. November 29th of what year? 2004, Judge. We received a response on November 7th, 2004, which provided some information pertaining to payroll leave that was served on us. In addition, we received a response. I'm sorry. December 7th, 2004 is when the agency responded to our discovery. We also received a response, an amendment response to the discovery on December 13th, and another amendment to the discovery on December 27th, where it says the appellee has gathered relevant documents and is in the process of interpreting them, but it's being hampered somewhat in that process by the unavailability due to the holiday season personnel. So we were able to get our records via the discovery process. That's why we use MSPP. When you filed your complaint, what documents did you file with the complaint in support of the allegation? Judge, if you look at the blue on page 892, that was the sole piece of paper that we need to file with MSPP. I hope everybody catches up. 892. In the requested remedy section, we see in bold print that says requested remedy, restoration of lost leave, an order for compliance, attorney's fees, and other expenses that are allowable by law. It is impossible under the Butter Bar decision, Judge, to get 15 days of military leave in any given year. The purpose of the Butter Bar was you get 15 days and the agency is mischarged during the intervening weekends. So you're only entitled roughly to, in an occasional situation with a flex work schedule, three mischarged days a year. For the agency to say that we're asking for 960 hours, it's impossible under the Butter Bar decision. The Butter Bar decision says only intervening weekends. So we know what the numerator is, but we need to identify what the number is that's the denominator. He's saying it's 960 and you're saying it's maybe 60. Judge, we're saying whatever we can prove through the discovery process, we're owed. And we proved through the discovery process we were owed 16. We got the full 16. That was, we got what we accomplished. The discovery response documents that you cited, the three documents late in the year, 04, they're all part of the record in this case? No, Judge. Unfortunately, discovery is done in between the parties with no MSPB involvement. So if you look at the attestation from MSPB, it's not in there. So the record will not have what I just said. If it pleases the court, I'll be more than happy to supply any supplemental appendix with that information in there. I think you should do that after conferring with the opposing counsel to make sure that there's nothing else that he needs to get put into the record that isn't already here. That would be helpful. Sure. Go ahead. If I could just point out the public policy implications in this case. The court had a great deal. You already covered that. We understand the incentive to bring these cases depends on getting the people. Right, and then I can answer it. All right. We thank both counsel. We'll take the case under your discretion. All rise.